| | |
|---|---|
| INVESTORS WARRANTY OF AMERICA, INC., | Civil Action No.: 2:09-CV-04490-WJM-MF |
| Plaintiff, | |
| vs. | |
| B.W.E . DEVELOPMENT, L.L.C. and LEONARD H. BERKELEY, individually, | |
| Defendants/Third-Party Plaintiffs, | |
| vs. | |
| AEGON N.V., a publicly traded corporation of the Netherlands, AEGON USA REALTY ADVISORS, INC., an Iowa Corporation, XYZ COMPANIES, 1 thru 10 (being a fictitious name for parents, subsidiaries and affiliates of AEGON USA Realty Advisors, Inc.), JOHN DOES, 1 thru 20 (being a fictitious name for officers, directors and/or other agents of AEGON N.V., its parents, subsidiaries, and affiliates), KERRY KILLINGER, THOMAS W. CASEY, STEPHEN J. ROTELLA, RONALD J. CATHCART, DAVID C. SCHNEIDER, JOHN F. WOODS, MELISSA J. BALLENGER, ANNE V. FARRELL, STEPHEN E. FRANK, THOMAS C. LEPPERT, CHARLES M. LILLIS, PHILIP D. MATHEWS, REGINA MONTOYA, MICHAEL K. MURPHY, MARGARET OSMER-MC QUAIDE, MARY E. PUGH, WILLIAM G. LEED, JR., AND ORIN C. SMITH, | |
| Third-Party Defendants. | |

---

### DEFENDANTS/THIRD PARTY PLAINTIFFS' BRIEF IN OPPOSITION TO NOTICE OF MOTION FOR SUMMARY JUDGMENT

---

**WEINER LESNIAK LLP**
**629 Parsippany Road**
**P.O. Box 438**
**Parsippany, New Jersey 07054**
**Phone: (973) 403-1100**
**Fax:   (973) 403-0010**
**Attorneys for Defendants/**
**Third Party Plaintiffs**
B.W.E . Development, L.L.C. and
Leonard H. Berkeley

**Of Counsel & on the Brief:**
Ronald A. Berutti

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................iii

TABLE OF APPENDIX .........................................v

PRELIMINARY STATEMENT .....................................1

STATEMENT OF PROCEDURAL HISTORY............................4

LEGAL ARGUMENT.............................................5

    POINT I...............................................5

        PLAINTIFF'S MOTION TO DISMISS MUST BE DENIED

          A.   Fraud ......................................6

          B.   Mutual Mistake .............................13

    POINT II..............................................16

        SEPARATE DEFENSES PRECLUDE SUMMARY JUDGMENT

CONCLUSION ...............................................22

i

# TABLE OF AUTHORITIES

Cases

Beachcomber Coins, Inc. v. Bockett,
  166 N.J. Super. 442, 446 (App. Div. 1979) ................... 14

Bonnco Petrol, Inc. v. Epstein,
  115 N.J. 599 (1989) .................................... 13, 14

Casamasino v. City of Jersey City,
  158 N.J. 332, 354 (1999) .................................. 19

Duff v. Trenton Beverage Co.,
  4 N.J. 595, 605 (1950) .................................... 18

General Inv. Corp. v. Angelini,
  58 N.J. 396 (1971) ........................................ 21

Gitomer v. U.S. Cas. Co.,
  39 Backes 531, 536, 55 A. 2d 291, 294-295
  (Ch. Div. 1947) ........................................... 19

Heake v. Atlantic Cas. Ins. Co.,
  15 N.J. 475, 481 (1954) ................................... 18

Kislak Co. v. Byham,
  229 N.J. Super. 163, 69 (App. Div. 1988) .................. 14

Knorr v. Smeal,
  178 N.J. 169, 178 (2003) .................................. 19

Kulwicki v. Dawson,
  969 F. 2d 1454, 1462 (3rd Cir. 1992) ..................... 6

M.J. Paquet, Inc. v. New Jersey Department of
  Transportation,
  171 N.J. 378, 391 (2002) .............................. 16, 17

ii

_Sprenger v. Trout_,
  375 N.J. Super. 120, 136 (App. Div. 2005) .................... 20

St. Pius X House of Retreats v. Camden
  Diocese,
  88 N.J. 571 (1982) ......................................... 13

_Strawn v. Canuso_,
  140 N.J. at 59 ............................................. 8

_Tellabs, Inc. v. Makor Issues & Rights, Ltd._,
  551 U.S. 308, 322, 127 S.Ct. 2499 (2007) .................... 5

_United States Bank v. Kensey_,
  306 N.J. Super. 540 (App. Div. 1997) ....................... 7

Rules

_Fed.R.Civ.P._ 12(b)6 .............................................. 5

Publications

Second Restatement of Contracts..........................14,17

Williston on Contracts (Rev. Ed. 1936) Section 1937.............18

## PRELIMINARY STATEMENT

Plaintiffs wish to expedite a foreclosure.  However, facts supporting the counterclaims and separate defenses plainly show that the defendants in this action may be entitled to reformation or modification of their agreement with the plaintiff as a matter of law, as well as damages.  While a mortgage on real property is in issue, the parties' agreement was premised on a leasehold.  Specifically, the parties entered the agreement because of the financial viability of Washington Mutual Bank, N.A. ("WaMu"), which was entering a twenty five (25) year lease with defendant B.W.E. Development, LLC ("BWE").  This lease provided the true basis for the loan, and the defendants relied on WaMu's financial statement as establishing that entity's financial viability so as to justify the loan.  Plaintiff either failed to disclose information it had about that financial statement's overvaluation of WaMu assets, or else it too relied on that financial statement and was mutually mistaken about WaMu's viability, which was the foundation of the loan and guarantee transaction.

Although plaintiff insisted on obtaining WaMu financials as a basis for underwriting the loan, it knew or should have known that the WaMu financial statement misrepresented its true

1

financial condition.  More specifically, the problems that would lead to WaMu's bankruptcy were similar to problems that plaintiff had.  Both inflated their financial positions based on mortgage-backed securities and similar instruments that they maintained.  While WaMu would file for bankruptcy, plaintiff suffered billions of dollars in losses for the same reason. Plaintiff could not reveal its knowledge as to the potential negative impact these instruments ultimately could have on WaMu's long-term viability, because to do so would, in essence, be an acknowledgment that its own financial house was not in order and that the whole banking system was hanging by a thread.

It is anticipated that discovery will reveal that plaintiff, through its parent AEGON N.V., knew or should have known that WaMu's balance sheet masked its potential collapse. This created an unreasonable risk that default would occur should WaMu go under, thereby increasing the likelihood of a resulting foreclosure, as well as efforts to pursue defendant Leonard H. Berkeley, individually, on his limited personal guarantee.  Plaintiff, which had superior bargaining power, had access to this information which was material.  The defendants did not have such access.  Under the circumstances, therefore, New Jersey law imposes a disclosure duty on plaintiff.  Had the risks been made known, the transaction would not have been

2

consummated.   The information as to what plaintiff knew can only be developed through discovery.

Since plaintiff had incentive to avoid disclosing what it knew about potential problems with WaMu's viability when having a duty to disclose, the defendants argue against dismissal of the counterclaims and summary judgment on the foreclosure counts of the complaint, on three grounds:

- Given the inequality of knowledge and bargaining power between plaintiff and defendant, under New Jersey law plaintiff was required to disclose what it knew about WaMu's financial statement, in the absence of which disclosure it has committed a legal and/or equitable fraud resulting in entitlement to modification remedy of some or all the parties' agreement, including Berkeley's limited personal guarantee, and damages;

- Second, even if there was no such duty owed by the plaintiffs, which is denied, there is sufficient evidence of mutual mistake such that the foundation of the parties' transaction, its most material element, was incapable of being performed because WaMu was not viable, thereby entitling the defendants to reformation as the harmed party;

- Third, affirmative defenses provide a basis for modification or reformation of the contract such that summary judgment cannot be entered, especially without discovery having been conducted.

Based upon all these things, summary judgment cannot be granted, particularly at this early stage before any discovery has been conducted.   Likewise, the Counterclaims state viable causes of action.   Thus, the motion must be denied.

3

## STATEMENT OF PROCEDURAL HISTORY

Plaintiff filed a Complaint in Foreclosure on or about September 2, 2009.  The Complaint sought foreclosure on real property as well as a money judgment against the defendant entity B.W.E. Development, LLC ("BWE"), and defendant Berkeley, individually, on a limited guarantee he gave with respect to the parties' transaction.

Following unsuccessful efforts to settle the matter, the defendants filed an Answer, Separate Defenses and Counterclaims. Shortly thereafter, a Notice of Motion seeking permission to extend the time to file a Third Party Complaint was filed.  A letter Order granting that motion was entered December 10, 2009. Plaintiff then filed a letter seeking reconsideration of that Order on December 17, 2009.

On January 11, 2010, in keeping with the letter Order of December 10th, a Third Party Complaint was filed naming plaintiff's parents and affiliates, as well as officers, directors and agents of WaMu, as third-party defendants. (ECF Document Number 14)

On January 13, 2010, Judge Cox-Arleo entered an Order scheduling oral argument on the request for reconsideration, and ordering that opposition be filed despite the fact that the

Third Party Complaint had already been filed, thereby essentially rendering the issue moot.

**LEGAL ARGUMENT**

**POINT I**

**PLAINTIFF'S MOTION TO DISMISS
MUST BE DENIED.**

Plaintiff has moved to dismiss the counterclaims pursuant to *Fed.R.Civ.P.*12(b)6. Those counterclaims assert fraud, equitable fraud, and mutual mistake. The legal tests for success of the fraud claims and the mutual mistake claim are different. A viable claim is stated for all three counts, however, such that dismissal is appropriate.

On a motion to dismiss for failure to state a claim on which relief can be granted, the court must "accept all factual allegations in the complaint as true." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499 (2007). "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id. Further, if matters outside the pleading are relied on in opposition, the court may convert the motion to one for summary judgment. *See*

5

Kulwicki v. Dawson, 969 F. 2d 1454, 1462 (3rd Cir. 1992).
However, the accompanying Certification of Lenard H. Berkeley
primarily explains why, under the circumstances present, the
Counterclaims are claims on which relief can be granted.

## A.   Fraud

The Counterclaim alleges that the plaintiff, through its
parent AEGON, N.V., knew or should have known that WaMu was
misstating its financial position.   WaMu's financial viability
was the key component of the parties' loan transaction.
(Counterclaim ¶¶ 1-13).   It is alleged that WaMu's financial
statement was knowingly fraudulent or otherwise grossly
misstated that entity's financial position. (Counterclaim ¶ 15)
Yet, mortgage instruments were executed by BWE, and a limited
personal guaranty was given by Berkeley, who did not know about
the fraud and had no reason to anticipate it. (Counterclaim
paragraph 15-21, 28). Plaintiff had reason to know this, yet was
invested in the same risks as were most major financial
institutions such as WaMu. (Counterclaim ¶¶ 22-27, 29)   Thus,
plaintiff would not disclose its knowledge about the risk to
borrowers, and ignored the risk when making its loans, since the
entire commercial banking industry was playing the same game,
hoping nothing ever came of the speculation in which they were
engaged. (Counterclaim ¶¶ 34-36)   As is noted below, because of

6

its superior knowledge and bargaining power, a duty to disclose was imposed on plaintiff. This Court can take judicial notice of the economic collapse that occurred when the real estate market went down, such that WaMu and other banks failed because of toxic assets on their balance sheets reliant on a rising real estate market. Thus, the government began the controversial bailout process.

More specifically, plaintiff's parent AEGON, N.V. engaged in the same type of financial statement puffery as did WaMu. It knew, or should have known, that the very basis of the parties' transaction, being WaMu's strong financial position, may well be fraudulent. AEGON maintained the same types of toxic assets on its books, all of which were grossly overvalued. When the real estate market bubble burst, billions of dollars worth of losses were suffered by AEGON at the same time that WaMu filed for bankruptcy, rendering the lease that provided the basis for the parties' transaction worthless. (Counterclaim paragraphs 19-27). In fact, it is judicial noticeable that AEGON suffered billions of EURO in losses based upon grossly overvalued assets that it maintained. (See accompanying Certification of Leonard H. Berkeley, ¶¶ 25-26, Exhibit A).

Plaintiff relies upon United States Bank v. Kensey, 306 N.J. Super. 540 (App. Div. 1997), for the proposition that as

7

mortgagee, it owed no duty to disclose to the defendants as mortgagors of the Property. While this is the general state of the law in New Jersey, Kensey does leave room for a contrary conclusion in cases such as this. Specifically, the Appellate Division wrote as follows:

> But, we perceive no sound reason to impose upon a bank the responsibility to supply a potential borrower with its estimate of the value of the subject property, **at least where, as here, the borrower has the ability to make that determination. The principal factors shaping the duty to disclose "have been the difference in bargaining power between the parties" and the "difference in access to information"**

Id.; _quoting_ Strawn v. Canuso, 140 N.J. at 59 (emphasis added).

In order to better understand why the facts suggest the imposition of a duty here, under this narrow area of Kensey, the accompanying Certification of Leonard H. Berkeley was submitted herewith. To the extent that this Court considers the Certification to be extraneous of the counterclaims for purposes of this motion, then the motion should be treated as one for same for summary judgment, the standard for which is well known and needs not be repeated. In this case, the very factors noted in Kensey militate in favor of the defendants and against the plaintiff bank, in terms of the bank's duty.

8

Specifically, the evidence shows that both parties claimed to rely upon the on-line WaMu financial statements in determining whether or not they would enter into this loan transaction. Plaintiff, a subsidiary of AEGON N.V., a publicly traded corporation, required the WaMu financial statement showing its viability, and required that the loan payments be made directly and immediately by wire upon receipt by the defendants of wired rent payments from WaMu. Thus, plaintiff contemplated a seamless stream of payments from WaMu to plaintiff from the first day through the last day of the loan term, as did the defendants. This was strictly because the WaMu lease was the only thing that provided value satisfactory to support the loan. Indeed, the lease was much more valuable than the loan, provided WaMu stayed in business. This appeared to the defendants, at least, to be a sure thing given WaMu's sterling financial statement and reputation. Without the WaMu lease, everybody knew that there was no value in the real property that could support this loan.

In the months preceding the final closing, defendant Berkeley was suffering through the terminal illness of his wife, who also was co-owner of defendant BWE. AEGON, during that period, requested to close on numerous occasions and was turned away by Berkeley because of the tragic circumstances surrounding

9

his wife's terminal illness. Only days after ending his official mourning period following her passing, the closing with AEGON took place, on which date AEGON required receipt of an updated WaMu financial statement to confirm the viability of that entity. At that time, WaMu was widely perceived as being a top flight bank which was opening branches at a rapid pace throughout the country. Its financial statement showed it to be a multiple hundred billion dollar company with a AAA credit rating. Of course, WaMu was a viable company, so why was AEGON demanding updated financials at closing? Perhaps AEGON knew that WaMu's assets were hyper-inflated. Indeed, in its Form 6-K public filing, AEGON notes: "AEGON regularly monitors industry sectors and individual debt securities for evidence of impairment." (Berkeley Cert., Ex. A, p. 2 note).

Specifically, WaMu ultimately collapsed in less than two years because of its heavy investment in speculative mortgage backed securities which could not be fairly valued, but which were kept on the books at inflated mythical values so as to give the impression of having tremendous value. AEGON also maintained massive mortgage backed securities on its own books with similarly fabricated valuations. As WaMu was going bankrupt, AEGON N.V., also was losing billions of dollars from its own balance sheet. (Berkeley Certification, ¶¶ 25-26,

Exhibit A)  As noted in the Third Party Complaint on file (ECF Number 14), evidence indicates WaMu was aware that these assets were overvalued.  It is not a big leap in logic to suggest that AEGON also may have had such an awareness given its financial expertise.

The defendants had absolutely no reason to know or to believe that the banking industry, which they had been led to believe was sound as were most every day Americans, was a house of cards.  They did not have access to the type of information which could allow them to make such a determination.  To the contrary plaintiff knew, or should have known, that WaMu's financial statement masked a disaster waiting to happen.  Unlike the defendants, plaintiff had access to the information but chose not to disclose it. Yet it had superior bargaining power, particularly given its knowledge of Mr. Berkeley's emotional state, and was able to dictate the closing terms it wished.

Under the circumstances, and in keeping with the above quoted Kensey opinion, the parties' bargaining power and a level of knowledge was unequal, thus imposing a duty to disclose.  At the least, plaintiff probably had access to information about the true financial viability of WaMu through its parent, AEGON N.V., which is now a third party defendant in this lawsuit. Yet plaintiff failed to disclose this information, which would have

11

enabled the defendants to know what AEGON knew. This probably would have killed the transaction, particularly given Mr. Berkeley's emotional state. Discovery likely will reveal that AEGON knew that the lease provided substantial risk because of WaMu's true financial condition, based upon WaMu's carrying the same type of risky assets on its balance sheet that AEGON was carrying at the time. The grieving Mr. Berkeley did not have access to such information, which was **the** crucial factor in the parties' transaction.

Plaintiff had a duty to disclose what it knew about WaMu's financial statement, as a matter of law. In failing to make such disclosure, it set up the precipitous fall that has occurred. Its efforts to foreclose on this real property cannot succeed — at least not on summary judgment — given the probability that it had information suggesting that WaMu's finances were not as sound as they appeared to the casual observer who had no reason to understand the complicated mess that was WaMu's balance sheet. The difference in bargaining power, and the difference in access to information between plaintiff and the defendants, clearly militates in favor of a finding that a duty to disclose existed. Facts need to be explored in order to determine whether that duty was breached.

12

Thus, the first two Counterclaims state a claim on which relief can be granted.

**B.   Mutual Mistake**

Even if this Court is to determine that plaintiff did not owe a duty to disclose what it knew or may have known about WaMu's financial statement, then both plaintiff and the defendants were equally fooled by WaMu's finances. In such case, the parties' loan documents are subject to modification under the doctrine of mutual mistake (or one of the defenses noted in Point II, *infra*), so that the Third Count of the Complaint cannot be dismissed.

In Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599 (1989), the New Jersey Supreme Court wrote:

> New Jersey law also requires for reformation for mutual mistake that the minds of the parties have met and breached a prior existing agreement, which the written document fails to express ... In St. Pius X House of Retreats v. Camden Diocese, 88 N.J. 571 (1982), we stated that in the context of situations where a writing inaccurately reflects the parties' agreement or intentions, 'mutual mistake requires that *both* parties are in agreement at the time they attempt to reduce their understanding to writing, and the writing fails to express that understanding correctly."

Bonnco Petrol, 115 N.J. at 608-609.

The Bonnco Court added: "The doctrine of mutual mistake applies when 'mistake was mutual in that both parties were

13

laboring under the *same* misapprehension to a particular,
essential fact.'" Id. at 608 (*quoting* Beachcomber Coins, Inc.
v. Bockett, 166 N.J. Super. 442, 446 (App. Div. 1979); *Accord.*
Kislak Co. v. Byham, 229 N.J. Super. 163, 69 (App. Div. 1988).
Further the Supreme Court approvingly cited the Restatement
(Second) of Contracts §§152 and 155. Specifically, §152(1)
reads:

> **Where a *mistake of both parties* at the time a contract
> was made as to a basic assumption on which the
> contract was made has a material effect on the agreed
> exchange of performances, the contract is voidable by
> the adversely affected party** unless he bears the risk
> of the mistake under the rules stated in Section 154.

Bonnco Petrol, *supra,* 115 N.J. at 608 (*quoting* Restatement
(Second) Contracts, §152(1) (emphasis added).

> Further, §155 of the Second Restatement of Contracts reads:

> Where a writing that evidences or embodies an
> agreement in whole or in part fails to express the
> agreement because of a *mistake of both parties* as to
> the contents reflect of the writing, the court may at
> the request of a party reform the writing to express
> the agreement, accept to the extent that rights of
> third parties such as good faith purchases for value
> will be unfairly affected.

Id.

In the present case, the Counterclaim alleges, and the
evidence shows, that both parties at the very least relied upon
WaMu's financial statement as the essential basis of their
bargain. (Counterclaim ¶¶ 43-46)   Both sides believed WaMu was

14

financially capable of existing and paying rent over the course of twenty-five years. The financial statements plainly confirmed this. Moreover, plaintiff was so sure of this that it structured the transaction with the defendants such that it would be paid practically in direct fashion from WaMu every month, so that the defendants never had to reach into their pockets to pay rent. Clearly, at the very least, both parties were mutually mistaken as to the viability of WaMu such that they both signed off on the agreement.

Under this circumstance, reformation may be awarded. In particular, Mr. Berkeley's personal guarantee may be subject to reformation. Mr. Berkeley, who was suffering under tremendous emotional stress due to his wife's passing at the time of this transaction, as was known by the plaintiff, executed a limited personal guarantee of $250,000.00 having no absolutely no way of knowing that he realistically faced exposure as a result of a WaMu collapse that nowhere appeared to be imminent. Mr. Berkeley plainly was not in a condition where he would have accepted any such risk. The fact that the parties may have been mutually mistaken as to WaMu's financial condition at the very least should result in voidance or reformation of this limited personal guarantee.

15

Based upon the foregoing, the Counterclaims clearly are viable. No discovery has yet been exchanged. The discovery, the defendants are convinced, will support either or both the fraud or the mutual mistake theories such that summary judgment as to the Counterclaims and as to the affirmative claims of foreclosure cannot be granted, since the very documents upon which plaintiffs wish to foreclose may ultimately be reformed or voided at the conclusion of the litigation.

## POINT II

### SEPARATE DEFENSES PRECLUDE SUMMARY JUDGMENT.

Viable defenses to the loan documents exist such that summary judgment cannot be granted with respect to Counts One, Two and Three of the Complaint.

With respect to the Fourth Separate Defense, the Doctrine of Impracticability was pled. "The essence of the principle is that a party's performance under a contract is rendered impracticable by the occurrence of an event the non-occurrence of which is a basic assumption on which the contract is made." M.J. Paquet, Inc. v. New Jersey Department of Transportation, 171 N.J. 378, 391 (2002). Impracticability provides grounds for discharge of contractual obligations, as noted in the Restatement (Second) of Contracts (1979) as follows:

16

> Where, after a contract is made, a party's performance
> is made impracticable without its fault by the
> occurrence of an event the non-occurrence of which was
> a basic assumption on which the contract was made, his
> duty to render that performance is discharged, unless
> the language or the circumstances indicate the
> contrary.

M.J. Paquet, *supra*, 171 N.J. at 390 (*quoting* Restatement
(Second) of Contracts, 1979) Section 261.

In the present case, there was a basic assumption of the
contract that WaMu was viable and was not on the verge of
bankruptcy because of its phony finances, which both parties may
have relied upon at closing. As such, based on the Doctrine of
Impracticability, the defendants' obligations may be discharged
in whole or in part.

In the Eighth Separate Defense, the "Doctrine of
Impossibility" is pled. Impossibility of performance also can
result in relief from contractual obligations.

> The basis of the defense of impossibility is the
> presumed mutual assumption when the contract is made
> that 'some fact essential to performance then exists,
> or that it will exist when the time for performance
> arrives. The only evidence, however, of such mutual
> assumption is, generally, that the Court thinks a
> reasonable person, that is, the court itself, could
> not have contemplated taking the risk of the existence
> of the fact in question.

Duff v. Trenton Beverage Co., 4 N.J. 595, 605 (1950)(*quoting*
Williston on Contracts (Rev. Ed. 1936) Section 1937).

17

Here, it is hard to fathom the Court not taking the risk that WaMu would be in existence for twenty-five years when its financial statement showed hundreds of billions of dollars in assets and an AAA credit rating. WaMu's imminent bankruptcy was nowhere near the horizon to the naked eye, and it was an expanding financial institution upon which so many people relied. The assumption at the time of the contract was that WaMu would remain a viable entity throughout the term of the lease such that its rent would pay off the loan and would even provide a profit to BWE, particularly in the later years of the lease. Thus, "impossibility" is a valid defense precluding summary judgment.

The Ninth Separate Defense alleges reformation, which is permissible under the "Doctrine of Mutual Mistake." The general rule with respect to reformation of contracts is, "Relief will be granted only where there is a mutual mistake or where a mistake on the part of one party is accompanied by fraud or another unconscionable conduct of the other party." Heake v. Atlantic Cas. Ins. Co., 15 N.J. 475, 481 (1954). Here, fact questions exist as to whether plaintiff engaged in unconscionable conduct by not disclosing its knowledge as to the facts surrounding WaMu's financial statement, including the massive over-inflation of assets such as those that plaintiff's

18

parent also maintained.  This is particularly so in light of the circumstances under which Mr. Berkeley was proceeding, where plaintiff knew that he was in grief as a result of the traumatic and recent death of his spouse.

In the Tenth Separate Defense, the "Doctrine of Estoppel" is pled.  It has long been held that the doctrine of equitable estoppel or "estoppel in pais," is "grounded in equity and justice, that one shall not be permitted to repudiate an act done **or condition assumed** that would cause an injustice to another who, having the right to do so, has relied thereon." Gitomer v. U.S. Cas. Co., 39 Backes 531, 536, 55 A. 2d 291, 294-295 (Ch. Div. 1947).   "Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." Casamasino v. City of Jersey City, 158 N.J. 332, 354 (1999). "The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Knorr v. Smeal, 178 N.J. 169, 178 (2003).  "The doctrine is invoked in the interests of justice, morality and common fairness," and is applied when a party "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [the other party] acted or changed their position to their detriment."  Id. (citations omitted)

19

Here, plaintiff acted in such a manner as to cause reliance on the belief that the WaMu lease was satisfactory to satisfy all of its needs under the loan.  It set up a payment scheme whereby the WaMu lease was to pay for the loan as if the defendants did not even exist, given that payments were being wired virtually directly from WaMu to plaintiffs.  They did this after checking the financial statement of WaMu not once, but twice, seemingly assured that WaMu was in good standing. Evidence that they knew, or should have known, that WaMu did not have such financial standing may exist and may be developed during discovery. We know for a fact that AEGON lost tens of billions of dollars to its own value because it over-inflated asset valuation of mortgage-backed securities and similar instruments.  As estoppel is a viable defense in this case, summary judgment is precluded.

The Eighteenth Separate Defense serves the "Doctrine of Unclean Hands," in which "one seeking equitable relief cannot take advantage of his own wrong." Sprenger v. Trout, 375 N.J. Super. 120, 136 (App. Div. 2005) (citations omitted.)  "If the plaintiff creates or contributes to the situation on which it relies, the court denies equitable relief in order to deter the wrongful conduct." Id.

20

Here, plaintiff created or contributed to its own situation on which it relies, since it looked at WaMu's financial statement and determined to go ahead with the transaction regardless of what it knew or should have known about WaMu's finances. Specifically, it knew or should have known that the WaMu balance sheet was suspect, based upon its own investments in mortgage-backed securities and similar instruments which were speculative, although they were carried on the books as being highly valued. Now plaintiff comes to Court seeking foreclosure. This would be entirely inequitable. Consequently, unclean hands may appropriately preclude relief for the plaintiffs.

The Sixteenth Separate Defense asserts failure of consideration. Failure of consideration defense applies to a plaintiff who holds a note, but may not be a "holder in due course." General Inv. Corp. v. Angelini, 58 N.J. 396 (1971). Here, there is no proof that the plaintiff is a holder in due course as it alleged to be an assignee of the lending entity AEGON USA Realty Advisors, Inc.

## CONCLUSION

For the foregoing reasons, the Counterclaims state viable causes of action since the parties had unequal bargaining power and, it is alleged, plaintiff maintained knowledge superior to the defendants which it owed a duty to disclose. Likewise, summary judgment cannot be granted on the Counterclaims since material facts exist and discovery is needed. Plaintiff either had a duty to disclose what it knew about the deficiencies with WaMu's financial statement. Otherwise, the parties were mutually mistaken as to its viability such that reformation is appropriate. In either case, at the very least, Mr. Berkeley's limited personal guarantee should be voided or reformed.

Further, numerous defenses exist which potentially preclude the relief sought by the plaintiff on equitable grounds such that summary judgment cannot be granted, particularly where there has been no discovery to date.

Respectfully submitted,

**WEINER LESNIAK LLP**
Attorneys for Defendants,
B.W.E . Development, L.L.C. and
Leonard H. Berkeley

By: _____
Ronald A. Berutti
A Member of the Firm

Dated:  January 19, 2010
F:\WP-DATA\LIT\MATTERS\20335 Brief in Opp to SJ 1-19-10. rab.doc