IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INVESTORS WARRANTY OF AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>B.W.E. DEVELOPMENT, L.L.C. and LEONARD H. BERKELEY, ESQ., individually,<br><br>Defendants. | CIVIL ACTION NO.: **2:09-CV-04490-WJM-MCA** |

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS AND FOR SUMMARY JUDGMENT ON COUNTS ONE, TWO AND THREE OF THE COMPLAINT IN FORECLOSURE**

**TAYLOR, COLICCHIO & SILVERMAN, LLP**
502 Carnegie Center, Suite 103
Princeton, New Jersey 08540
(609) 987-0022

Of Counsel and On the Brief: Robert W. Keddie, III, Esq. (RWK-7065)
On the Brief: Regan C. Kenyon Jr., Esq. (040762006)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 4

LEGAL ARGUMENT ........................................................................................................ 5

    I.   SINCE BWE'S COUNTERCLAIMS FAIL AS A MATTER OF LAW, THE BERKELEY CERTIFICATION IS IMMATERIAL AND SHOULD NOT BE CONSIDERED ............... 5

    II.  BWE'S FRAUD CLAIMS FAIL AS A MATTER OF LAW ................................. 6

    III. NO MUTUAL MISTAKE EXISTED AT THE TIME THE PARTIES EXECUTED THE MORTGAGE .................................................................................................. 10

    IV. DEFENDANTS' AFFIRMATIVE DEFENSES ARE INAPPLICABLE ........................... 12

CONCLUSION .................................................................................................................. 15

TABLE OF AUTHORITIES

**Cases**

Bonnco Petrol, Inc., v. Epstein, 115 N.J. 599 (1989) .................................................. 11, 12

Gross v. Lasko, 338 N.J. Super. 476 (App. Div. 2001) ...................................................... 15

Kampf v. Franklin Life Ins. Co., 33 N.J. 36 (1960) ............................................................ 15

Karl's Sales and Serv. v. Gimbel Bros., 249 N.J. Super. 487 (App. Div. 1991) ............... 15

Kulwicki v. Dawson, et al., 969 F. 2d 1454 (3d Cir. 1992) .................................................. 6

Levinson v. Weintraub, 215 N.J. Super. 273 (App. Div. 1987) ......................................... 15

Magnum LTL, Inc., v. The CIT Group/Business Credit, Inc., 2009 WL 1025550 (D.N.J. 2009) . 6, 7

Professional Cleaning and Innovative Building Services, Inc., v. Kennedy Funding, Inc., et al., 2009 WL 1651131 (D.N.J. 2009) ............................................................................................ 7

Solondz v. Kornmehl, 317 N.J. Super. 16 (App. Div. 1998) .............................................. 15

St. Pius X House of Retreats v. The Diocese of Camden, 88 N.J. 571 (1982) .................. 11

United Jersey Bank, et al., v. Kensey, et al., 306 N.J. Super. 540 (App. Div. 1997), certif. denied 153 N.J. 402 (1998) ............................................................................................ passim

**Other Authorities**

Restatement (Second) of Contracts § 151 ........................................................................ 11

Restatement (Second) of Contracts § 155 ........................................................................ 12

Restatement (Second) of Contracts § 261 ........................................................................ 13

Restatement (Second) of Contracts Ch. 11 Introductory Note ......................................... 13

Restatement (Second) of Torts § 551 ............................................................................... 10

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................ 14

3

PRELIMINARY STATEMENT

Nothing in the opposition of Defendant B.W.E. Development, L.L.C., ("BWE") alters the conclusion that its counterclaims should be dismissed and that summary judgment on Counts One, Two and Three of the Complaint should be entered. In a desperate attempt to delay the inevitable, and to avoid acknowledging that the counterclaims are fatally deficient, BWE attempts to rescue them by introducing with its opposition additional factual pleadings contained in the supplemental Certification of Leonard Berkeley ("Berkeley Cert"). Under the Federal Rules of Civil Procedure, this Court has no obligation to consider these "new" facts. However, even if the Court considers the Berkeley Cert, these new facts do nothing to save the claims -- which are legally deficient.

As set forth in the motion papers of Plaintiff Investors Warranty of America, Inc., ("IWA") and herein, BWE's claims for fraud and equitable frauds should be dismissed because even if BWE's contentions were correct (which they are not), IWA owed no duty to disclose any facts to BWE prior to executing the loan documents. New Jersey law is very clear on this point. There is no presumed fiduciary relationship between a lender and its customer. It is an inherently adversarial relationship. Mr. Berkeley, BWE's principal, and a practicing attorney specializing in real estate law, with thirty eight (38) years of experience, knew this quite well. BWE's attempt to create an exception to this universal rule fails under the established case law of this State.

BWE's claim of mutual mistake is equally deficient. BWE does not and cannot allege that the terms of the loan documents inaccurately reflect the terms agreed to by the parties. In fact, BWE has admitted all of the terms of the loan documents. Nor can BWE claim a shared misapprehension as to a present or past fact, as required by law. Its claim is based on a mutual mistake as to the future performance of its tenant, WAMU. Under established New Jersey law, any claim of mutual mistake has to be as to a present or past fact, not something that may occur in the future.

4

The failure of BWE's counterclaims is also the death knell for its affirmative defenses. Since the alleged defenses carry the same ill-founded factual basis and basic legal underpinning as the deficient counterclaims, they cannot serve as valid affirmative defenses. In the end, the Court is left with a commercial mortgage whose terms are clear, and whose execution and failure to make payment are admitted. Under these circumstances, the terms of the mortgage should be enforced as written and summary judgment of foreclosure should be entered without delay.

## LEGAL ARGUMENT

### POINT I

### SINCE BWE'S COUNTERCLAIMS FAIL AS A MATTER OF LAW, THE BERKELEY CERTIFICATION IS IMMATERIAL AND SHOULD NOT BE CONSIDERED

The Court is under no obligation to consider the Berkely Cert. BWE provides no compelling reason for its consideration. Moreover, even if it is considered, it has no material impact on IWA's motion, which should be granted.

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents." Magnum LTL, Inc., v. The CIT Group/Business Credit, Inc., 2009 WL 1025550 at *1 (D.N.J. 2009) (internal quotations and citations omitted). Notwithstanding this, the Court has the discretion to consider evidence outside the complaint in ruling on motions to dismiss. Kulwicki v. Dawson, et al., 969 F. 2d 1454, 1462 (3d Cir. 1992) (citing 5A Wright & Miller, Federal Practice and Procedure § 1366, at 491 (1990)). There is, however, no reason for the Court to exercise that discretion here where dismissal is sought because the counterclaims are legally (not factually) insufficient.

Essentially abandoning its Counterclaims as pled, BWE's Counter Statement of Material Facts (Counterstatement) cites the Berkeley Cert **for every statement therein** and then argues that because of those additional factual allegations, the motion should be converted to one for summary judgment under Fed. R. Civ. P. 56. See Opposition at p. 5. BWE claims that the Berkeley Cert is worthy of consideration because it "primarily explains why, under the circumstances present, the Counterclaims are claims upon which relief can be granted." See Opposition at p. 6.

Such explanation, through supplemental certification testimony, is not only improper within the confines of a Fed. R. Civ. P. 12(b)(6) motion, but more importantly, is immaterial to this specific motion because BWE's counterclaims fail **as a matter of law**. Magnum, supra, 2009 WL at *1 and Points II & III, infra. Whether the Court excludes or includes the Berkeley Cert, IWA's motion should be granted and the counterclaims should be dismissed.

POINT II

BWE'S FRAUD CLAIMS FAIL AS A MATTER OF LAW

Even if every fact BWE alleges is true (which they are not), there is no duty in New Jersey to disclose to BWE any information that IWA's predecessor in interest, Life Investors Insurance Company of America ("LIICA") had or used to underwrite the relevant loan. See, United Jersey Bank, et al., v. Kensey, et al., 306 N.J. Super. 540, 561 (App. Div. 1997), certif. denied 153 N.J. 402 (1998), (holding no basis to impose liability on bank under duty to disclose). New Jersey law is clear, "there is no presumed fiduciary relationship between a bank and its customer." Id. at 552 (citations omitted); see also Magnum, supra, 2009 WL at *3 (stating "as [a] general rule, no presumed fiduciary relations exists between banks and their customers . . . due, in large part, to the adversarial nature of the debtor-creditor relationship"); and Professional Cleaning and Innovative Building Services, Inc., v. Kennedy Funding, Inc., et al., 2009 WL 1651131 at *12 (D.N.J. 2009) (holding that creditor-debtor relationship fails to qualify as an intrinsically fiduciary relationship).

6

The Kensey court went to great lengths to demonstrate the nearly universal nature of that maxim. See id. at 552-53 (providing survey of other jurisdictions' treatment of creditor-debtor relationship all of which found no fiduciary duty). As that court concluded, "[t]here is, therefore, a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." Id. at 553 (internal quotations omitted). Moreover, as this Court has recently opined:

> Under New Jersey law . . . [t]he question of whether a duty to disclose exists is a matter of law. This determination is one of fairness and policy that involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. Such a duty generally arises if: (1) a fiduciary relationship exists; (2) either party entering into the contract expressly reposes a trust and confidence in the other; or (3) the transaction is intrinsically fiduciary in nature.
>
> [Professional Cleaning, supra, 2009 WL at *12 (internal quotations and citations omitted).]

The alleged facts here do not give rise to any of these three situations. First, it is admitted that LIICA and BWE shared a traditional creditor-debtor relationship. Counterclaim, ¶ 13. Such relationships do not give rise to a duty to disclose because "it would be anomalous to require a lender to act as a fiduciary for interests on the other side of the negotiating table." Kensey, supra, 306 N.J. Super. at 553 (internal quotations omitted). As such, by law, "this case involves neither a fiduciary relationship nor a transaction that is intrinsically fiduciary." Ibid. (internal quotations omitted).

Nor is this a case where BWE reposed trust or confidence in LIICA. To establish a duty to disclose under this category, the pleading party must allege either that "one of the parties expressly reposes a trust or confidence in the other," or, that "because of the circumstances, such a trust or confidence is necessarily implied." Id. at 553 (internal quotations omitted).

New Jersey has adopted the Restatement (Second) of Torts § 551 in determining when such circumstances arise. Id. at 554 (citing Strawn v. Canuso, 140 N.J. 43, 60-61 (1995)). That section

7

"imposes a duty upon a party to disclose to another 'facts basic to the transaction, if he knows that the other is about to enter into it under mistake . . . and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.'" Ibid. (quoting Restatement (Second) of Torts § 551(2)(e)). Specifically, "the situation envisioned is one in which the advantage taken of the plaintiff's ignorance is 'so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling . . . .'" Ibid. (quoting Restatement (Second) of Torts § 551(2), Cmt. 1). BWE makes no such claim here.

The Kensey court provides three such examples. Id. at 555 (citing Barnett Bank of West Florida v. Hooper, 498 So. 2d 923 (Fla. 1986); Capital Bank v. MYB, Inc., 644 So. 2d 515 (Fla. Dist. Ct. App. 1994); and Central States Stamping Co. v. Terminal Equipment Co., Inc., 727 F. 2d 1405 (6th Cir. 1984)). Each of those cases dealt with a bank that induced a customer to enter into a transaction involving another existing bank customer by acting as a financial advisor and providing false or misleading or concealing information about the then-existing customer, such as a customer's involvement in criminal activity or its insolvency, all for the personal gain of the bank. Ibid.

No such facts are alleged here. LIICA never acted as an advisor to BWE, nor does BWE allege as much. Moreover, it is not alleged that WAMU was an existing customer of LIICA, such that LIICA was solely privy to its financial information. Counterclaim, ¶ 25. Most importantly, there is no allegation of self-dealing here. Unlike the cases relied upon by Kensey, LIICA was not trying to rid itself of a bad account by defrauding a new customer into taking on the existing customer's debt. See Kensey, supra, 306 N.J. Super. at 555. This was simply a run-of-the-mill commercial mortgage transaction between a lender and a very sophisticated borrower. Tellingly, nowhere in more than sixty (60) pages of pleadings, affidavits, memoranda of law and other

8

documents do the words "trust" or "confidence" even appear, much less an allegation that BWE reposed such trust and confidence in LIICA. The reason for this is simple. No such facts exist.

BWE's principal, Berkeley, is a trained, practicing attorney and sophisticated business person. He has practiced law for thirty eight (38) years, specializing in real estate law. Reply Certification of Robert W. Keddie, III, ("Keddie Cert"), Exhibit A. Moreover, among other roles, he has served as special counsel to the Essex County Improvement Authority, approved counsel to the Federal Deposit Insurance Corporation, and approved special counsel to the Resolution Trust Company. Ibid. Therefore, this was not a situation where a sophisticated party preyed upon the ignorance of the unsophisticated. Mr. Berkeley was at all times well aware that no "trust and confidence" was reposed between the parties, and that they were in an adversarial type relationship. Kensey, supra, 306 N.J. Super. at 553.

Furthermore, BWE attempts to create its own exception to the three categories discussed above by arguing that Kensey "leave[s] room for a contrary conclusion" to that of no duty in a creditor-debtor relationship. Opposition at p. 8. BWE states that "[t]he principal factors shaping the duty to disclose have been the difference in bargaining power between the parties and the difference in access to information." Opposition at p. 8 (internal quotations omitted). However, the difference in bargaining power and access to information is not an exception unto itself. See Kensey, supra, 306 N.J. Super. at 557 (to find duty allegations must demonstrate that "bank actively encouraged the [borrower] to rely upon its advice and concealed its self-interest in promoting transaction") (citations omitted). Under New Jersey law, those differences are merely part of the analysis as to whether the parties expressly reposed a trust and confidence in each other or one would be necessarily implied based on circumstance. See Restatement (Second) of Torts § 551, discussed supra. As set forth above, this is not such a case, and no such trust or confidence was alleged or could have existed between the parties.

9

In the end, the Kensey court dismissed claims very similar to BWE's,[1] holding that New Jersey "law imposes no duty on banks to disclose to the borrower the manner in which the lender internally analyzes and underwrites a loan." Kensey, supra, 306 N.J. Super. at 558 (internal quotations omitted). While holding the borrower responsible for its debt, the Kensey court said it best: "Defendants were not neophytes to real estate transactions. They saw advantage and profit . . . [and] gambled and lost. The loss should remain where lack of success in the marketplace has put it." Id. at 561 (internal quotations omitted). That statement is equally applicable here, and BWE's counterclaims should be dismissed.

POINT III

NO MUTUAL MISTAKE EXISTED AT THE TIME THE PARTIES EXECUTED THE MORTGAGE

BWE's claim of mutual mistake should also be dismissed. BWE does not allege that the terms of the loan documents inaccurately reflect the terms agreed to by the parties. See St. Pius X House of Retreats v. The Diocese of Camden, 88 N.J. 571, 579 (1982) (stating that "mutual mistake requires that *both* parties are in agreement at the time they attempt to reduce their understandings to writing, and the writing fails to express that understanding correctly"). Nor has BWE alleged a circumstance "when a mistake was mutual in that both parties were laboring under the same misapprehension as to a particular, essential fact." Bonnco Petrol, Inc., v. Epstein, 115 N.J. 599, 608 (1989) (internal quotations omitted). That mistake has to be as to a present or past fact, not something that may occur in the future. Restatement (Second) of Contracts § 151, Comment a.

---

[1] In Kensey, the defendant, who, like Berkeley here, was a sophisticated businessman, alleged that the bank had committed fraud by violating its duty to disclose when it failed to share its internal information regarding the value of certain assets of another customer that the defendant purchased prior to lending him the money for the purchase. Kensey, supra, 306 N.J. Super. at 550. Here, BWE makes the same claim, alleging that LIICA had some vague knowledge that WAMU was overstating its financials and was on the doorstep of collapse. Under Kensey, such knowledge, while obviously refuted, is beside the point because LIICA had no duty to disclose "the manner in which [it] internally analyzes and underwrites a loan." Id. at 558 (internal quotations omitted).

10

There was no mistake as to present or past fact, nor were the parties "laboring under the same misapprehension." The alleged mutual mistake here relates to the future performance of BWE's commercial tenant under a third-party contract. Counterclaim, Count Three. The failure of BWE or LIICA to predict WAMU's business failure, which occurred some twenty months after the loan closed, is the exactly the sort of failure to predict the future which the law does not treat as a mistake. See Restatement (Second) of Contracts § 151, Comment a.

Moreover, BWE own allegations do not support the claim. First, BWE admits that at the time of contracting, WAMU was a financially viable entity. Counterclaim, ¶ 8 (stating that WAMU's "financial statement reflected that WAMU maintained a AAA bond rating from Moody's, the highest possible rating, and that WAMU maintained over $250,000,000,000.00 in assets"). Second, BWE admits that WAMU performed under the terms of the lease for some twenty (20) months before defaulting, so there could be no mistake as to WAMU's ability to perform. Counterclaim, ¶¶ 17 & 18. Thus, by BWE's own pleadings, there is no support for "mutual mistake."

Furthermore, reformation due to mutual mistake is appropriate only "[w]here a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a **mistake of both parties** as to the contents or effect of the writing." Restatement (Second) of Contracts § 155 (emphasis added); Bonnco, supra, 115 N.J. at 608 (citing St. Pius X House of Retreats v. The Diocese of Camden, 88 N.J. 571, 579 (1982); and Berkowitz v. Westcester Fire Ins. Co., 106 N.J. Eq. 238, 241 (E. & A. 1930)). Here, like in Bonnco where the court found that mutual mistake was inapplicable, BWE does not allege that the terms of the loan documents failed

to accurately reflect the agreement of the parties; therefore, reformation is not an available remedy. Counterclaim, Third Count.[2]

## POINT IV

### DEFENDANTS' AFFIRMATIVE DEFENSES ARE INAPPLICABLE

BWE sole opposition to IWA's request for summary judgment is a laundry list of separate defenses, all of which rest on the viability of BWE's claims that a duty to disclose was breached and that the doctrine of mutual mistake applies. See Opposition, Point II. The Kensey court dismissed the identical arguments made by the borrower/defendant attempting to defeat a summary judgment motion in that case stating:

> We briefly address defendants' remaining claims. They assert that [the bank] should be equitably estopped from pursuing foreclosure because the bank was guilty of "unclean hands." Defendants also contend that the mortgages should not be enforced because there was a failure of consideration, and because the underlying transaction was unconscionable and violated public policy. These arguments do not require extended discussion. However defendants' claims are phrased, they all rest upon the underlying thesis that the bank violated its duty of disclosure. We find no breach of that duty, and thus the result is the same regardless of how defendants' arguments are couched.
>
> [Kensey, supra, 306 N.J. Super. at 561 (citations omitted).]

Specifically, BWE relies on the following separate defenses: impracticability, impossibility, mistake, estoppel, unclean hands, and failure of consideration. See Opposition at pp. 16-21.

As it relates to impracticability, BWE states that "[i]n the present case, there was a basic assumption of the contract that WaMu was viable and was not on the verge of bankruptcy because of its phony finances, **which both parties may have relied upon at closing**." Opposition at p. 17. With regard to impossibility, it states that "[t]he assumption at the time of the contract was that

---

[2] Moreover, reformation should not apply where the "rights of third parties such as good faith purchasers for value will be unfairly affected." Restatement (Second) of Contracts § 155. Here, IWA is such a third party, having stepped into the shoes of LIICA, the loan maker, by assignment for value. As a holder in due course, IWA should not be subjected to reformation of the loan documents. See Assignment of Mortgage, Security Agreement and Fixture Filing and Other Loan Documents, submitted previously with the Declaration of Lisa Carson as Exhibit A. Therefore, even if mutual mistake were held to apply, reformation is not available (Restatement (Second) of Contracts § 155). In such a situation, restitution is the appropriate remedy, and BWE should return the money it accepted as part of the loan transaction. Restatement (Second) of Contracts §§ 152 & 158.

12

WaMu would remain a viable entity throughout the term of the lease . . . ." Id. at 18. These defenses are obviously tied to the applicability of the doctrine of mutual mistake and therefore should be disregarded under Kensey. See, supra, Point III and Kensey, supra, 306 N.J. Super. at 561.

Even if the Court were to disregard the Kensey holding, the doctrines of impracticability and impossibility fail. Initially, they are one and the same. See Restatement (Second) of Contracts Ch. 11 Introductory Note, Reporter's Note (stating that Chapter 11 Impracticability of Performance and Frustration of Purpose consolidates and restates Chapter 14 Impossibility of the Restatement of Contracts and replaces "impossibility" with "impracticability" to better express heightened burden).

Impracticability traditionally only applies in three situations: (1) the supervening death or incapacity of a person necessary for performance, (2) the supervening destruction of a thing necessary for performance, and (3) a supervening prevention or prohibition by law. See Restatement (Second) of Contracts § 261, Comment a. None of those three situations apply here.

BWE also claims that the defense of unilateral mistake applies because IWA "engaged in unconscionable conduct by not disclosing its knowledge as to the facts surrounding WaMu's financial statement." Opposition at p. 18. As discussed in Point II, supra, no such duty to disclose existed. Kensey, supra, 306 N.J. Super. at 561. As such, this defense in unavailable.

BWE then proffers the doctrine of estoppel as a separate defense. Opposition at p. 19. The basis of that argument is that LIICA "knew, or should have known, that WaMu did not have" the financial standing that WAMU alleged in its financial statements, and allowed BWE to rely on WAMU's statements while knowing that they did not accurately reflect WAMU's actual financial condition – essentially a rephrasing of Defendants' duty to disclose argument. Opposition at p. 20. Again, as discussed in Point II, supra, the law imposed no duty on LIICA to disclose any of its own

underwriting information to BWE as part of the loan transaction. Kensey, supra, 306 N.J. Super. at 561. Accordingly, estoppel does not apply.

The same analysis applies to the defense of unclean hands. See Opposition at p. 20. BWE argues that LIICA "created or contributed to its own situation on which it relies, since it looked at WaMu's financial statement and determined to go ahead with the transaction regardless of what it knew or should have known about WaMu's finances." Opposition at p. 21. Again, this is merely a restatement of Defendants' duty to disclose argument and does not apply. See Point II, supra, and Kensey, supra, 306 N.J. Super. at 561.

Finally, BWE cannot avail themselves of the defense of failure of consideration because they have admitted the validity of the loan documents and the assignment of the loan to IWA. See Response to Statement of Undisputed Material Facts, ¶¶ 7 & 8; Fed. R. Civ. P. 8(b)(6) (stating "[a]n allegation – other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied").

In the end, it is well established in New Jersey that, when presented with a contract or agreement containing terms that are clear and unambiguous, the court must enforce those terms **as written**. Karl's Sales and Serv. v. Gimbel Bros., 249 N.J. Super. 487, 493 (App. Div. 1991); Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); see also Gross v. Lasko, 338 N.J. Super. 476, 485 (App. Div. 2001) (court enforced terms of mortgage contingency clause as written in residential real estate sales contract); Solondz v. Kornmehl, 317 N.J. Super. 16, 22 (App. Div. 1998) (court enforced agreed upon credit clause in residential real estate sales contract to the detriment of the seller); Levinson v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987) (court upheld disapproval of residential real estate sales contract pursuant to attorney review clause, despite "provocative policy considerations" to the contrary).

Here, the terms of the relevant Note, Mortgage and Assignment are clear and admitted. See Response to Statement of Undisputed Material Facts, ¶¶ 1 & 2 ("Admitted that a Secured Promissory Note was executed on or about January 12, 2007. . . . Admitted that the documents were so executed . . . ."). Moreover, Defendants admit that BWE ceased making payments. See Response to Statement of Undisputed Material Facts, ¶ 3 (Admitted that payments were no longer made . . . ."). Furthermore, Defendants have admitted that the loan remains unpaid, due and owing. See Response to Statement of Undisputed Material Facts, ¶¶ 4 & 5. Lastly, the terms of the Mortgage clearly entitle IWA to resort to the Mortgaged Premises in these circumstances. See Mortgage, Security Agreement and Fixture Filing, ¶ 19 (stating "Upon Default, the Lender may immediately proceed to foreclose the lien of this Mortgage, against all or part of the Property . . . ."). Accordingly, no material issues remain and summary judgment of foreclosure should be entered without further delay.

## CONCLUSION

For the foregoing reasons, Plaintiff Investors Warranty of America, Inc., respectfully requests that the Counterclaims be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and that summary judgment be entered in its favor on Counts One, Two and Three of the Complaint.

        TAYLOR, COLICCHIO & SILVERMAN, LLP
        Attorneys for Plaintiff, Investors Warranty of America

        _____
        Robert W. Keddie, III