**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

**LETTER OPINION**

June 23, 2010

Philip M. Colicchio
Taylor, Colicchio & Silverman, LLP
502 Carnegie Center
Suite 103
Princeton, New Jersey 08540
    (*Attorney for Plaintiff*)

Ronald A. Berutti
Weiner Lesniak, LLP
693 Parsippany Road
Box 438
Parsippany, New Jersey 07054
    (*Attorney for Defendant*s *B.W.E. Development, L.L.C. and Leonard H. Berkeley, Esq.*)

    **RE:**    **Investors Warranty of America, Inc. v. B.W.E. Development, L.L.C., et al.
            Civ. No. 09-4490 (WJM)**

Dear Counsel:

    The instant foreclosure action is brought by Plaintiff Investors Warranty of America, Inc. ("I.W.A.") as the assignee of a mortgage and note against the borrower, Defendant B.W.E. Development, L.L.C. ("B.W.E."), and the borrower's guarantor, Leonard H. Berkeley, Esq.  Presently before the Court are three motions, each brought by I.W.A.: (1) a motion to dismiss the counterclaims asserted by Defendants B.W.E. and Berkeley under Federal Rule of Civil Procedure 12(b)(6); (2) a motion for summary judgment on counts one through three of the complaint; and (3) a motion for the appointment of a rent receiver.  There was no oral argument.  Fed. R. Civ. P. 78.  For the reasons that follow, all three motions are **GRANTED** in their entirety.

**I.     BACKGROUND**

Defendant B.W.E. is a New Jersey company, owned by Defendant Leonard Berkeley, Esq., which executed a secured promissory note ("Note") in the amount of $1.25 million to the Life Investors Insurance Company of America ("LIICA") on January 12, 2007.  As security for this Note, B.W.E. executed a mortgage and assigned a property owned by B.W.E. to LIICA.  This property was located at 436 Harrison Avenue, Harrison, New Jersey.  Further, on or around the same date, Defendant Berkeley executed a Guarantee in favor of LIICA, in which he, among other things, personally guaranteed certain sums due and owing under the Note. This Note, mortgage, and all accompanying loan documents later were assigned by LIICA to Plaintiff I.W.A. on June 29, 2009.

Plaintiff I.W.A. alleges that B.W.E. has failed to make payments as required by the Note since April 1, 2009.  As such, Plaintiff contends that B.W.E. defaulted under the terms of the Note, which allow I.W.A. to accelerate the loan upon default and declare all sums due immediately.  I.W.A. did just this on July 7, 2009.  When Defendants B.W.E. and Berkeley failed to satisfy the debt, Plaintiff filed suit, seeking foreclosure on B.W.E.'s claim to the property, an order holding B.W.E. liable for amounts due under the Note, $250,000 from the guarantor Berkeley, and indemnification for costs and expenses from Berkeley.

Beyond their denials in the answer, Defendants assert a number of counterclaims against I.W.A., alleging that they were misled as to the value of 436 Harrison Avenue. Specifically, Defendants contend that the property was not worth $1.25 million at the time of the Note and mortgage; instead, Defendants state that the parties viewed the property as more valuable than it actually was since a prospective tenant, Washington Mutual Bank ("WaMu"), was set to enter into a long-term lease with B.W.E.. The property lost this purported inflated value when WaMu collapsed about eighteen months after the Note and mortgage were executed.  Defendants state that this collapse was due to WaMu's holding of certain financial instruments that "were backed by mortgages which did not have value satisfactory to secure such instruments." (Counterclaim ¶ 15.)

Defendants contend that LIICA should have known about WaMu's financial situation when B.W.E. executed the Note, since LIICA's parent corporation, AEGON, also held mortgage-backed securities. (Counterclaim ¶ 24.) As such, Defendants argue that LIICA had a duty to inform B.W.E. that its property had the potential to decrease in value due to WaMu's holdings and its potential insolvency.  Consequently, Defendants argue that they are entitled to rescission or modification of the Note and mortgage due to this misunderstanding as to the value of their own property – 436 Harrison Avenue.

## II. DISCUSSION

Plaintiff I.W.A. now moves to dismiss the counterclaims asserted by B.W.E. and Berkeley in their answer. Further, I.W.A. seeks summary judgment on counts one, two, and three of its six-count complaint. In addition, Plaintiffs seek appointment of a rent receiver. Each of these motions will be considered in turn.

### A. Motion to Dismiss Counterclaims

In their answer, Defendants assert three counterclaims: (1) breach of LIICA's duty to disclose WaMu's financial condition to B.W.E. during negotiations regarding the Note and the mortgage; (2) equitable fraud due to LIICA's failure to disclose WaMu's condition; and (3) recission of the Note and mortgage based on mutual mistake. Defendants premise I.W.A.'s alleged liability on its status as the successor-in-interest to LIICA. Plaintiff I.W.A. moves to dismiss each counterclaim under Rule 12(b)(6).

#### 1. *Motion to Dismiss Standard Under Rule 12(b)(6)*

In evaluating the sufficiency of counterclaims, the Court employs the familiar Rule 12(b)(6) standard. Counterclaims will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where they do not allege sufficient facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a counterclaim need not contain detailed factual allegations, a counterclaim-plaintiff is nonetheless obliged "to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a counterclaim-plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the nonmoving party. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). In the instant case, Plaintiff I.W.A. challenges the viability of the counterclaims asserted by Defendants B.W.E. and Berkeley. Accordingly, by virtue of Defendants being the nonmoving party, those facts articulated by B.W.E. and Berkeley in the counterclaims are to be accepted as true, with all favorable inferences drawn in support thereof. *See Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp.

2d 552, 556 (D.N.J. 2002) ("Here, in a motion to dismiss counterclaims, the allegations must be viewed in the light most favorable to defendant, the non-movant.").

   2.   *Breach of Duty to Disclose and Equitable Fraud*
   Counterclaims one and two assert a breach of LIICA's duty to disclose and equitable fraud, respectively. The Court will apply New Jersey law in assessing these claims, as the parties so designated in their agreements. *See* Certification of Lisa Carton Ex. B ¶ 21(Note); Ex. C ¶ 25.15 (Mortgage Agreement).

   These counterclaims are premised on the same theory, namely that LIICA owed a duty to inform Defendants of WaMu's financial condition during the negotiations regarding the Note and the mortgage.[1] This is clear from Defendants' first counterclaim, which asserts that "LIICA breached its duty to advise the defendants that ... WAMU probably was overstating its financial position and may default on its lease." (Counterclaim ¶ 35). Further, Defendants' equitable fraud allegations in counterclaim two presuppose the existence of a duty compelling LIICA to make the same disclosures regarding WAMU's finances. *See Jenkins v. Anderson Mach. Sales*, 2002 WL 31398172, at *8 (N.J. Super. Ct. App. Div. Aug. 1, 2002) (stating that equitable fraud includes "all acts, omissions or concealments which involve a breach of a legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another.") (quoting *Macfadden v. Macfadden*, 139 A.2d 774, 776 (N.J. Super. Ct. App. Div. 1958)) .

   It is well-settled under New Jersey law, however, that one party to a business transaction has no duty to disclose such information to another party. *See City of Millville v. Rock*, 683 F.Supp.2d 319, 330 (D.N.J. 2010). This rule is, of course, subject to certain exceptions. Such a duty to disclose may arise in one of following three situations: (1) where a fiduciary relationship is legally extant, as in transactions between a principal and agent or an attorney and client; (2) where either party entering into the contract "expressly reposes" a trust and confidence in the other; or (3) where the transaction is "intrinsically fiduciary" in nature. *Berman v. Gurwicz*, 189 N.J.Super. 89, 93-94, 458 A.2d 1311, 1313-14 (N.J. Ch. 1981).

   The instant transaction as alleged fits into none of these categories. Creditor-debtor relationships, such as the relationship between Defendants and LIICA, do not give

---

[1] The Court accepts as true, as it must for the purposes of this motion, that LIICA had experience with and knowledge of "the same types of securities which WAMU was reporting as constituting significant assets on its balance sheet." (Counterclaim ¶ 35.)

rise to a fiduciary duty. *See, e.g., United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997). Thus, being neither legally extant nor "intrinsically fiduciary," the creditor-debtor relationship here fails to fit into exceptions one and three. Further, there is no allegation that B.W.E. expressly reposed trust in LIICA. Accordingly, the instant transaction does not fall under exception two. As such, Defendants have failed to state a claim under either their breach of duty to inform or equitable fraud theories. Counterclaims one and two are therefore dismissed under Rule 12(b)(6).

       3.      *Mutual Mistake*

Defendants also seek rescission of the loan documents based on the doctrine of mutual mistake. This remedy is unavailing, however, as mutual mistake only applies where it is alleged that the parties had a meeting of the minds and reached a prior existing agreement, which the written document fails to express. *See Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 608 (1989); *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 88 N.J. 571, 579 (1982). That is not the allegation here; instead, Defendants contend that both sides failed to appreciate WaMu's financial condition. Since Defendants do not allege error in the reduction of their agreement to writing, counterclaim three should be dismissed.

      B.      <u>Motion for Summary Judgment</u>

Plaintiff moves for summary judgment on counts one, two, and three of the complaint, which seek enforcement of the provisions of the Note and Mortgage against Defendant B.W.E.[2] Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976).

Defendants admit in their answer and in their response to Plaintiff's Statement of Material Facts Not in Dispute that B.W.E. has defaulted on the Note and mortgage

---

[2] Plaintiff does not seek summary judgment on counts four through six of the complaint in the instant motion. In count four, Plaintiff seeks an order directing that B.W.E. be held "personally liable" under the Note. Further, in counts five and six, Plaintiff seeks judgment against Defendant Berkeley pursuant to the Guarantee executed by Berkeley.

agreements. (Answer ¶ 19; Defs.' Resp. to Pl.'s Statement of Material Facts Not in Dispute ¶ 3). By not making these required payments, Defendant B.W.E. defaulted and triggered the acceleration provisions of the Note and mortgage agreements, which allowed Plaintiff to demand, among other things, immediate repayment of the principal balance owed with interest, as well begin foreclosure proceedings. (Carson Cert. Ex. B. ¶¶ 8, 9; Ex. C ¶¶ 16, 19.) As such, under the clear and unambiguous terms of the agreements, upon Defendant B.W.E.'s admitted default, Plaintiff is entitled to foreclosure of the mortgage and accelerated payment of the sums outstanding.

Defendants point to no genuine issues of material fact in dispute. Instead, Defendants argue in their brief that the affirmative defenses pled in the answer preclude summary judgment. The mere pleading of affirmative defenses, however, is insufficient to prevent summary judgment. *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (holding that nonmoving party's "unsupported allegations . . . and pleadings are insufficient to repel summary judgment."); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Further, the certification of Defendant Leonard Berkeley does not place any genuine material issues of fact in dispute as to the validity of the Note or the mortgage. In his certification, Defendant Berkeley baldly states that, in late 2006 and early 2007, LIICA should have been able to predict WaMu's future insolvency since LIICA's corporate parent held assets similar to those held by WaMu. *See* Certification of Leonard H. Berkeley ¶ 24. Defendants offer no evidence or support for this allegation, either in fact or law. To the contrary, "[t]he general rule is that the knowledge of the parent corporation is not imputed to the subsidiary corporation ... unless a sufficient nexus between them is shown ... to provide an equitable reason for disregarding the separate corporate existences." *In re Mercedes-Benz Antitrust Litig.*, Civ. No. 99-4311, 2006 WL 2129100 at *17 (D.N.J. Jul. 26, 2006) (quoting *Thompson v. Air Power, Inc.*, 248 Va. 364, 371 (1994)). Thus, to the extent that it can be reasonably alleged that LIICA's parent corporation, AEGON, had any knowledge of WaMu's solvency due to both companies' purported pursuit of similar investments, such knowledge cannot be imputed to LIICA as a subsidiary without a substantial factual showing, which is clearly absent from this record.

Finding no genuine issues of material fact in dispute, the Court grants Plaintiff's motion for summary judgment on counts one through three of the complaint.

### C. Motion for a Rent Receiver

Finally, Plaintiff filed a motion seeking the appointment of a rent receiver.[3] At the outset, the Court notes that the mortgage agreement executed by LIICA and B.W.E. provides that B.W.E. "irrevocably ... consents" to the appointment of a rent receiver. (Carson Cert. Ex. C ¶ 18.) The agreement states that B.W.E.'s consent is given regardless of whether "waste or deterioration of the Real Property has occurred ... [or] other arguments based on equity would justify the appointment." (*Id.*) The presence of a contractual stipulation to the appointment of a receiver "is given considerable weight in the court's evaluation of whether a rent receiver should be appointed." *Barclays Bank, P.L.C. v. Davidson Ave. Assoc., Ltd.*, 644 A.2d 685, 687 (N.J. Super. Ct. App. Div. Jul. 8, 1994).

While this consent to the appointment of a receiver is entitled to considerable weight, it is not the only factor to be examined. In this analysis, the Court also considers other equitable factors, such as whether the property is inadequate security for the loan and whether the mortgagor has remained in default. *See id.* at 687. Here, Plaintiff asserts by certification that the property is inadequate security for the Note and that B.W.E.'s debts to I.W.A. will continue to balloon unless a rent receiver is appointed to take control of the property and find a new tenant. (Declaration of Lisa Carson, Motion to Appoint Rent Receiver ¶ 7). While Defendants counter by arguing that no receiver is necessary due to the fact that the property sits vacant, this fact instead seems to support the argument that the mortgagee's security is at issue. A vacant property encumbered by increasing debt does not speak to the security of Plaintiff's investment. As such, the court finds a sufficient basis for the appointment of a receiver.

At this point, however, I.W.A. has not identified a potential receiver for appointment. To the extent that I.W.A. still seeks a rent receiver, it shall submit the name of a potential receiver, with supporting credentials, to the Court for approval forthwtih.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Defendants' counterclaims and Plaintiff's motion for summary judgment on counts one, two, and three of the complaint are **GRANTED**. Further, Plaintiff's motion for appointment of a rent receiver

---

[3] The Court notes that counts one and two of the complaint also include such a demand.

is **GRANTED** and Plaintiff shall submit the name of a potential receiver, with supporting credentials, to the Court for approval forthwith.

                                                    /s/ William J. Martini
                                                    **William J. Martini, U.S.D.J.**